IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SCOTT TORRANCE and ANDREA TORRANCE, | ) | |
| | ) | |
| Plaintiffs, | ) | CV-02-592-ST |
| | ) | |
| v. | ) | AMENDED FINDINGS AND |
| | ) | RECOMMENDATION |
| AAMES FUNDING CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

On April 4, 2002, plaintiffs Scott Torrance and Andrea Torrance filed this action in the Circuit

Court for the State of Oregon for the County of Lincoln, Case No. 021516, against defendant Aames

Funding Corporation alleging claims for fraud, violation of the Unfair Trade Practices Act ("UTPA"),

ORS 646.608(1)(l), negligent misrepresentation, and violation of the Truth in Lending Act ("TILA"), 15

1 - AMENDED FINDINGS AND RECOMMENDATION

USC § 1601 *et seq*, and Federal Reserve Board Regulation Z, 12 CFR § 226.  These claims all arise

out of a refinancing transaction.  On May 8, 2002, defendant timely removed this case to this court

pursuant to 28 USC § 1441(b).  This court has federal question jurisdiction over the TILA claim, 28

USC § 1331, and supplemental jurisdiction over plaintiffs' state law claims, 28 USC § 1367.

Now before this court is defendant's Motion to Stay Litigation Pending Arbitration (docket

#4).  For the reasons set forth below, this court recommends that the motion be denied.

### DISCUSSION

**I.    The Arbitration Clause**

Plaintiffs sought refinancing from defendant of their single-wide manufactured home in Lincoln

City ("Lincoln City property").  Complaint, ¶ 2.  Defendant offered refinancing only as a package deal

on both plaintiffs' Lincoln City property and their other double-wide manufactured home located in

Cutler City ("Cutler City property").  *Id*, ¶¶ 3-9.  Plaintiffs agreed and were in the process of signing

the loan on the Cutler City property when defendant informed them that the loan for the Lincoln City

property was not ready because it was being "farmed out."  *Id*, ¶¶ 10-12.  On July 10, 2001, plaintiffs

signed the loan on the Cutler City property with the expectation that the loan on the Lincoln City

property would be immediately forthcoming.  *Id*, ¶ 13.

Among the documents signed by plaintiffs in connection with the refinancing of the Lincoln City

property is a separate two-page Agreement to Arbitrate which provides in part as follows:

///

> **Arbitration.**  Lender and Borrower agree to arbitrate any and all (1)
> Claims (except Claims Excluded From Arbitration) and (2) Third Party

> Claims.  The arbitration shall be (1) binding, and (2) governed by (i) the Federal Arbitration Act, 9 U.S.C. Section 1-9; (ii) the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association (the "Arbitration Rules") in effect at the time arbitration is requested, and (iii) this Agreement.

Affidavit of Paul Thompson, Exhibit 1 ("Agreement to Arbitrate"), p. 1.

The Agreement to Arbitrate defines a "claim" as:

> [A]ny case, controversy, dispute, tort, disagreement, lawsuit, claim, counterclaim, or any other matter in question between Lender and Borrower now or afer the date of this Agreement.  A Claim includes, without limitation, anything arising out of, in connection with, or relating to:
> (a) (i)  the terms of a Transaction, including without limitation the powers of the arbitrator under this Agreement, (ii) any representations or promises made about a Transaction, or (iii) the subject matter, applicability, meaning, validity, and enforceability of any documents relating to a Transaction . . .

*Id*.

Within three days after signing, plaintiffs advised defendant that they would rescind the loan on the Cutler City property if they were unable to secure the loan on the Lincoln City property by July 13, 2001.  *Id*, ¶ 14.  That same day, defendant represented that plaintiffs were pre-approved for a loan on the Lincoln City property that would be processed upon plaintiffs providing a homeowners insurance binder and completion of an appraisal review.  *Id*, ¶ 15.  In reliance on that representation, plaintiffs did not rescind the loan on the Cutler City property.  *Id*, ¶¶ 17, 20.  However, plaintiffs were not pre-approved for the loan on the Lincoln City property and that loan never materialized.  *Id*, ¶¶ 16, 18.

///

3 - AMENDED FINDINGS AND RECOMMENDATION

## II.    **Enforceability of the Arbitration Clause**

Defendant argues that the Agreement to Arbitrate signed by plaintiffs requires plaintiffs' claims to be submitted to arbitration because they all arise out of or relate to the refinancing of their manufactured home or the relationships created by it.

Plaintiffs counter that the Agreement to Arbitrate:  (1) was not knowingly entered into by them and was specifically disclaimed by defendant at the time of signing;  (2) is a contract of adhesion and unenforceable; and (3) is an excessive waiver of rights and unconscionable.

### A.    **Applicable Law**

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, binding, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 USC § 2.  If an issue is referable to arbitration under a written agreement, the court is required to direct that issue to arbitration and stay the trial of the remaining issues until arbitration is complete.  *Id*, § 3. Where "the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*, § 4. If made, an agreement to arbitrate shall be "rigorously enforce[d]."  *Dean Witter Reynolds, Inc., v. Byrd*, 470 US 213, 221 (1985).

> Under Section 4 of the Act, the district court must order arbitration if it
> is satisfied that "the making of the agreement for arbitration . . . is not in
> issue. . . . "Therefore, the district court "can only determine whether a
> written arbitration agreement exists, and if it does, enforce it 'in
> accordance with its terms.'"

4 - AMENDED FINDINGS AND RECOMMENDATION

*Howard Elec. & Mech. v. Briscoe Co.,*, 754 F2d 847, 849 (9th Cir 1985) (citations omitted).

The Supreme Court has repeatedly affirmed that all doubts as to the scope of arbitrability must be resolved in favor of arbitration. *Volt Info. Sciences v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 US 468, 475-76 (1989); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 US 1, 24-25 (1983).

Before this court may stay proceedings in this action and enforce arbitration, it must determine: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the claims or issues raised are within the scope of such agreement. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,* 991 F2d 42, 45 (2nd Cir 1993); *Lenhart v. Westfield Fin. Corp.*, 909 F Supp 744, 748 (D Haw 1995).

### B.    Validity of the Arbitration Clause

Plaintiffs signed the Agreement to Arbitrate as part of the loan transaction for the Cutler City property, but allege that this loan was procured by fraud.  Had they known that defendant would fail to provide a loan on the Lincoln City property, then they would have rescinded the loan for the Cutler City property.  However, where a court is called upon to determine the "threshold question of arbitrability," the court should consider only "the validity and scope of the arbitration clause itself," and not the contract as a whole.  *Republic of Nicaragua v. Standard Fruit Co.*, 937 F2d 469, 475 (9th Cir 1991), *cert denied*, 503 US 919 (1992) ("*Standard Fruit*"), citing *Dean Witter Reynolds, Inc.,* 470 US at 218.  Fraud claims must be submitted to arbitration unless the arbitration clause itself was

fraudulently induced. *Prima Paint Corp. v. Flood & Conclin Mfg. Co.*, 388 US 395, 402-04

(1967). Thus, an arbitration clause may be enforced "even though the rest of the contract is later held

invalid by the arbitrator." *Standard Fruit,* 937 F2d at 476.

      Although plaintiffs cannot avoid arbitration by alleging that the entire loan transaction was

fraudulently induced, they also argue that the Agreement to Arbitrate itself was procured by fraud. A

federal court may consider claims of fraud in the inducement only "if the fraud relates specifically to the

arbitration clause itself and not to the contract generally." *Three Valleys Mun. Water Dist. v. E.F.*

*Hutton & Co.*, 925 F2d 1136, 1140 (9th Cir 1991); *see also Moseley v. Electronic & Missile*

*Facilities, Inc*., 374 US 167, 171 (1963) (holding that when the petitioner "attacked not only the

subcontracts, but also the arbitration clauses contained therein, as having been procured through fraud,"

the district court must determine whether there was fraud in the inducement of the arbitration clause);

*Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F2d 282, 286-87 (9th Cir 1988), *overruled on other*

*grounds by Tichnor v. Choice Hotels Int'l, Inc.*, 265 F3d 931, 941-42 (9th Cir 2001) (holding that

when plaintiff claimed fraud in the inducement of both the arbitration clause and the contract as a whole,

the claim of fraud in the inducement of the arbitration "bears directly on the validity of their assent to the

arbitration  clause" which "is therefore not suitable for arbitration and the courts 'may  proceed to

adjudicate it'"). Thus, this court may resolve plaintiffs' claims that the Agreement to Arbitrate, as

opposed to the entire loan for the Cutler City property, was fraudulently induced.

      In determining the validity of an arbitration agreement, federal courts "should apply ordinary

state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279

F3d 889, 892 (9th Cir), *cert denied*, 122 S Ct 2329 (2002), citing *First Options of Chicago, Inc. v. Kaplan*, 514 US 938. 944 (1995). Accordingly, this court must apply Oregon contract law to determine if the Agreement to Arbitrate is valid.

///

### 1.    <u>Fraudulent Inducement and Disclaimer</u>

Plaintiffs assert that the Agreement to Arbitrate is invalid because they did not knowingly sign it and defendant disclaimed it. Plaintiffs were presented with a large number of documents to sign at closing and do not remember signing the Agreement to Arbitrate. Affidavit of Scott Torrance, ¶ 3. They also do not recall defendant explaining the Agreement to Arbitrate or advising them of the consequences of signing it. *Id*, ¶¶ 4-5. In addition, the Declaration of Oral Disclosure completed by the loan officer at closing indicates that the Arbitration Clause was not orally called to the attention of and explained to plaintiffs. *Id*, Exhibit 1. Had plaintiffs understood the significance of the Agreement to Arbitrate, they would not have signed it. *Id*, ¶ 6.     Despite their lack of memory, the document itself reveals that plaintiffs signed it. In addition, defendant mailed the Agreement to Arbitrate to plaintiffs, along with other disclosures, on June 22, 2001, 18 days before closing. Affidavit of Traci Eshelman, ¶ 4 & Exhibit A. Thus, plaintiffs had almost three weeks to review the Agreement to Arbitrate before closing. A party's failure to read a contract is no defense to enforcement of the contract absent special circumstances. *Knappenberger v. Cascade Ins. Co.*, 259 Or 392, 398, 487 P2d 80, 83 (1971).

Although plaintiffs had ample opportunity to read the Agreement to Arbitrate before signing, they argue defendant's failure to orally disclose it to them operates to void or disclaim the Agreement to Arbitrate. That argument is contravened by the undisputed evidence and the applicable law.

The Oral Disclosure is a checklist used by defendant's employees when presenting the closing documents to a borrower. Second Affidavit of Paul Thompson, ¶ 4. Checking a particular item indicates that the employee has explained that particular document to the borrower. *Id*. Checking "N/A" (not applicable) next to an item does not mean that defendant voids or disclaims the document. *Id*. Here, the loan officer, who was a new employee, mistakenly marked "N/A" next to "Arbitration Clause" on the Oral Disclosure. *Id*. This was simply a clerical mistake. *Id*. Before plaintiffs signed the Agreement to Arbitrate, Paul Thompson, the Branch Manager, specifically recalls calling it to plaintiffs' attention and explaining it. *Id*, ¶ 3. He informed plaintiffs that if any dispute arose in connection with the loan, plaintiffs would be required to submit their claims to arbitration. *Id*.

Given defendant's undisputed explanation, the Oral Disclosure does not specifically disclaim the signed Agreement to Arbitrate. Furthermore, even if defendant had failed to explain the Agreement to Arbitrate to plaintiffs, that failure is not fatal. The Ninth Circuit has declined to impose an obligation on parties who deal at arm's length to explain to each other the terms of a written contract. *Cohen*, 841 F2d at 287. In fact, "allegations of misrepresentations directly contrary to the specific and unambiguous terms of a written arbitration agreement do not, as a matter of law, state a claim for fraud." *Id* at 288.

### 2.    <u>Unenforceable Contract of Adhesion</u>

Plaintiffs also argue that the Agreement to Arbitrate is unenforceable because it was presented to them as an "as is" package without an opportunity to negotiate terms related to the arbitration. The Agreement to Arbitrate is a contract of adhesion since it is a form contract imposed by a party with superior bargaining power and not subject to negotiation. *Collins v. Farmers Ins. Co of Oregon*, 312 Or 337, 362, 822 P2d 1146, 1160 (1991) (citing cases). However, to the extent that plaintiffs claim the entire refinancing transaction was an unenforceable contract of adhesion, they attack the contract as a whole, rather than the arbitration clause in particular. As discussed above, the validity of the contract as a whole must be decided by the arbitrator, not this court.

Plaintiffs also assert that the Agreement to Arbitrate was "hidden" or made a "non-event" and therefore void, citing *Ting v. AT&T*, 182 F Supp2d 902, 912 (ND Cal 2002). *Ting* does not assist plaintiffs. It involved an arbitration provision included in AT&T's regular billings to its customers, along with a misleading statement that "your AT&T service or billing will not change under the AT&T Consumer Services Agreement; there's nothing you need to do." *Id* at 911. In contrast, plaintiffs received the separate two-page Agreement to Arbitrate before closing and signed it at closing. Nothing was hidden from them.

### 3.    Unconscionable Waiver of Rights

Plaintiffs also assert that the Agreement to Arbitrate is unconscionable by overly favoring the lender in several respects. First, while plaintiffs are required to arbitrate all of their claims, defendant is free to pursue certain claims in court:

> **Claims Excluded From Arbitration.** Despite the other terms of this Agreement, neither Borrower [n]or Lender can require the other to

> arbitrate (i) foreclosure proceedings . . ., or (ii) an application by or on behalf of the Borrower for relief under the federal bankruptcy laws or any other similar laws of general application for the relief of debtors, or (iii) any Claim where Lender seeks damages or other relief because of Borrower's default under the terms of a Transaction. . . .

Agreement to Arbitrate, p. 2.

Second, it contains a provision limiting plaintiffs' damages "to actual and direct damages" and waives both parties' rights "to consequential, punitive, exemplary or treble damages." *Id*. Third, it requires plaintiffs to pay half of the arbitration costs, and fourth, it mandates that the proceedings are confidential.

As a general rule, statutory claims may be the subject of an arbitration agreement provided that statutory rights are not waived. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 US 20, 26 (1991) (Age Discrimination in Employment Act subject to arbitration pursuant to NYSE Rule 347). "So long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id* at 28, quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 US 614, 637 (1985) (holding that federal antitrust claims can be subject to arbitration). At a minimum, statutory rights include both substantive protections and access to a neutral forum in which to enforce those protections. *Graham Oil Co. v. ARCO Products Co.*, 43 F3d 1244, 1246-1248 (9th Cir 1994), *cert denied*, 516 US 907 (1995) (arbitration clause that purported to waive remedies provided by federal statute and to shorten statute of limitations for filing such claims violated statute and was unenforceable). Applying this basic principle, one court has concluded that a mandatory employment arbitration agreement is lawful if it:

> (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum,

*Cole v. Burns Int'l Sec. Servs.*, 105 F3d 1465, 1482 (DC Cir 1997).

Plaintiffs allege two statutory claims, one for violation of UTPA and one for violation of TILA. Although the parties do not address the issue, this court assumes that either or both the UTPA and TILA encompass unwaivable statutory rights. The question, then, is whether arbitration is an adequate forum for the vindication of those unwaivable statutory rights.

### a.      Lack of Mutuality

Plaintiffs complain that the Agreement to Arbitrate lacks mutuality because it requires them to arbitrate all their claims, but does not require defendant to arbitrate foreclosure proceedings, bankruptcy claims, or claims arising from plaintiffs' default. In asserting that this lack of mutuality is unconscionable, plaintiffs rely primarily on *Circuit City Stores, Inc.*, *supra*, which held unconscionable a similar arbitration provision in an employment application. In reaching that conclusion, the Ninth Circuit applied California law which had recently invalidated a virtually indistinguishable agreement requiring employees, as a condition of employment, to submit all claims relating to termination of employment, while the employer retained the right to sue the employee in court. *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal 4th 83, 99 Cal Rptr 2d 745, 6 P3d 669 (2000). California law requires "some modicum of bilaterality" in an arbitration agreement. *Id*, 24 Cal 4th at 117, 99 Cal Rptr at 770, 6 P3d at 692. "[W]ithout at least some reasonable justification for such one-

sidedness based on 'business realities,'" the California Supreme Court reasoned that arbitration was "less a forum for neutral dispute resolution and more as a means of maximizing employer advantage." *Id*.

Numerous other courts, on the other hand, have addressed the same issue and held that arbitration clauses identical or very similar to the one at issue here are enforceable. Applying Pennsylvania law, the Third Circuit rejected a borrower's argument that an arbitration provision in a secondary mortgage contract was unconscionable because the lender retained the right to sue in court to enforce its security agreement. *Harris v. Green Tree Fin. Corp.*, 183 F3d 173, 179-181 (3rd Cir 1999). It noted that "[m]odern contract law largely has dispensed with the requirement of reciprocal promises . . . provided that a contract is supported by sufficient consideration." *Id* at 180; *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 79 (1981). Observing that most federal and state courts have held that strict mutuality of promise is not a requirement, it concluded that "[i]t is of no legal consequence that the arbitration clause gives Green Tree the option to litigate arbitrable issues in court, while requiring the Harrises to invoke arbitration." Harris, 183 F3d at 181.

Other courts also have considered and upheld similar arbitration provisions despite a lack of mutuality. *E.g., Gray v. Conseco, Inc.*, 2000 WL 1480273 (CD Cal 2000); *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F Supp2d 655, 658 (SD Miss 2000); *Conseco Fin. Servicing Corp. v. Wilder*, 47 SW3d 335, 342 (Ky App 2001); *Munoz v. Green Tree Fin. Corp.*, 343 SC 531, 542, 542 SE2d 360, 365 (SC App 1998).

Oregon has not specifically addressed whether mutuality is required in arbitration agreements. However, Oregon law is in accord with the law of Pennsylvania, upon which the Third Circuit based its decision in *Harris*, in that equivalent obligations are not required for a contract to be enforceable. *Davis v. Dean Vincent, Inc.*, 255 Or 233, 240, 465 P2d 702, 705 (1970) ("mutuality of remedy (as distinguished from mutuality of obligation) is no longer required"); *Tiggelbeck v. Russell*, 187 Or 554, 583, 213 P2d 156, 169 (1949) ("The rule which required that there must have been mutuality of remedy at that time when the contract was entered into, or the contract will not afterward be specifically enforced, has been repudiated for all practical purposes"). Mutuality of obligation means that "each party is under a legal duty to the other; each has made a promise and each is an obligor." *Pacific Pines Constr. Corp. v. Young*, 257 Or 192, 196, 477 P2d 894, 896 (1970), quoting 1A Corbin, CONTRACTS § 152, p. 4. Here, mutuality of obligation exists because defendant agreed to loan money to plaintiffs in exchange for plaintiffs' agreement to pay back the loan. The requirement of consideration is met even if one party is more obligated than the other.

Furthermore, even under California law, there is some reasonable justification for such one-sidedness based on business realities. As explained by one court:

> The trial court's conclusion also ignores the realities of business risks. Green Tree retained the option to use judicial or non-judicial relief to enforce a security agreement relating to the manufactured home, to enforce the monetary obligations secured by the manufactured home, or to foreclose on the manufactured home. Secured transactions allow lenders to take greater risks because their ability to protect a loan is enhanced by the legal right to recover and sell the collateral in the event of default. Judicial remedies for the recovery of property, such as the replevin action, and the foreclosure action, provide specific procedures for protection of collateral and the parties during the pendency of the

proceedings. These protections relate to both parties, and are facilitated by the enforcement procedures specified in the law. Thus, we conclude this clause does bear a reasonable relationship to the business risks.

*Lackey v. Green Tree Fin. Corp.*, 330 SC 388, 401, 498 SE2d 898, 905 (SC App 1998) (footnote and citation omitted).

The claims that defendant may litigate are basically claims asserting its security interest. These claims are heavily regulated by statute, allowing for streamlined procedures and effective protections for both sides. It does not strike this court as unreasonable, much less oppressive, to forego arbitration of such claims.

Therefore, the Agreement to Arbitrate is not rendered unconscionable simply because defendant is not required to arbitrate all claims.

### b.    **Limitation on Damages**

Defendant argues that the limitation on damages is enforceable because it applies to both parties. However, "the arbitral forum must allow the employee to adequately pursue statutory rights." *Circuit City Stores, Inc.*, 279 F2d at 895, citing *Gilmer*, 500 US at 28. One of the basic procedural and remedial protections is "to provide for all of the types of relief that would otherwise be available in court." *Id.* Because defendant does not argue otherwise, this court assumes plaintiffs can recover damages under both the UTPA and TILA which the Agreement to Arbitrate precludes.[1] By not

---

[1] A prevailing consumer may recover attorney fees and litigation costs under TILA, 15 USC § 1640(a)(3), but not under the Agreement to Arbitrate. However, this is not a waiver of a substantive right. Nothing prevents an arbitrator from following TILA, and there is no reason to believe an arbitrator would ignore the statute. *See Johnson v. West Suburban Bank*, 225 F3d 366, 373-74 (3ᵈ Cir 2000) (attorney fees recoverable in arbitration in a TILA action, as arbitrators possess the power to

allowing for full recovery of statutory damages, the limitation on damages provision clearly violates federal law.

### c.   **Arbitrators' Fees**

Plaintiffs also complain that the Agreement to Arbitrate requires them to pay half of the arbitrators' fees. The Agreement to Arbitrate says nothing about payment of arbitrators' fees. Instead, it states only that the arbitration "shall be . . . governed by . . . the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association [AAA] ("the Arbitration Rules") in effect at the time arbitration is requested."[2] Agreement to Arbitrate, p. 1. It also allows plaintiffs to recover those fees if they prevail: "I[f] the Borrower wins the arbitration, the arbitrator may the Borrower's reasonable attorney's fees and any filing fees paid by the Borrower to the [AAA], including the arbitrator's fees." *Id*.

In connection with defendant's motion to reconsider, the parties submitted the relevant arbitration rules regarding payment of the arbitrator's fee. On March 1, 2002, the AAA enacted its new Supplementary Procedures for Consumer-Related Disputes which apply whenever the AAA or its rules are used in an agreement between a consumer and a business. Affidavit of Michelle K. McClure in Support of Aames' Motion for Reconsideration, Exhibit A ("Supplementary Procedures"). Notwithstanding plaintiffs' argument to the contrary, these Supplementary Procedures expressly apply to this dispute between a consumer and a business. *Id*, Rule C-1(a).

---

fashion the same relief as courts); *Phillips v. Associates Home Equity Services, Inc.,* 179 F Supp2d 840, 844-45 (ND Ill 2001) (same).

     [2]   Those rules as amended and effective July 1, 2002, are available at AAA's website at www.adr.org.

Those Supplementary Procedures cap the amount of fees paid by a consumer to arbitrate a claim. If the consumer's actual damages are less than $10,000, then "the consumer is responsible for one-half of the arbitrator's fees up a maximum of $125." *Id*, Rule C-8. If a consumer's actual damages are between $10,000 and $75,000, then the consumer is responsible for one-half of the arbitrator's fees up to a maximum of $375." *Id*. If the consumer's claim exceeds $75,000, then the consumer must pay one-half of the arbitrator's fee, as well as an administrative fee. *Id*. These deposits are refunded if not used. *Id*. A party who is financially unable to pay may request a *pro bono* arbitrator and, in cases where an administrative fee applies, may obtain a waiver or deferral of the administrative fee. *Id*, Costs of Arbitration, pp. 9-10.

The parties dispute the amount of arbitrator's fee payable by plaintiffs to AAA. Defendant maintains that plaintiffs' actual damages are much less than $75,000 because plaintiffs were able to secure another loan with a lower interest rate and that special damages, such as plaintiffs' claim for $120,000 in emotional distress damages, are not included by AAA in the calculation of the fee. Plaintiffs contend that their payment obligation is much higher. The Supplementary Procedures state that administrative fees are based on the size of the claim which is "based only on the actual damages and not on any additional damages, such as attorneys' fees or punitive damages." *Id*, Rule C-8. This rule does not mention whether it also applies to the amount of the arbitrator's fees. Even assuming that this rule applies to arbitrator's fees as well, emotional distress damages may well be actual, rather than special damages, thereby increasing plaintiffs' payment obligation substantially.

For purposes of analysis, however, this court need not decide this issue. Even under the best case scenario, defendants concede that plaintiffs would be obligated to pay up to $375 for the

16 - AMENDED FINDINGS AND RECOMMENDATION

arbitrator's fee.  The fact that they are required to pay any arbitrator's fee is sufficient to render the

obligation unconscionable.

An arbitration clause is unenforceable if it denies a party a meaningful opportunity to vindicate

his or her substantive rights due to prohibitive arbitration costs.  An arbitration agreement, among other

requirements, must "ensure that employees do not have to pay *either* unreasonable costs *or* any

arbitrators' fees or expenses as a condition of access to the arbitration forum." *Circuit City Stores,*

*Inc.*, 279 F3d at 895, following *Cole*, 105 F3d at 1482 (emphasis added).

The cost of filing fees and other administrative expenses "are not problematic" because federal

courts impose such costs as well.  *Cole*, 105 F3d at 1484.  The only requirement is that those costs be

reasonable.  As recognized by the Supreme Court, "[i]t may well be that the existence of large

arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in

the arbitral forum."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 US 79, 90 (2000).  Where

"a party seeks to invalidate an arbitration agreement on the ground that arbitration would be

prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."

*Id* at 92.  At that point, the onus is on the party seeking arbitration to provide contrary evidence.  *Id*.

Because the record in that case contained no evidence regarding the costs associated with arbitration,

the Supreme Court refused to invalidate the arbitration agreement based on an entirely speculative

"risk" that the plaintiff would be "saddled with prohibitive costs."  *Id* at 91.

Here it is not clear whether plaintiffs would be saddled with prohibitive costs associated with

arbitration.  However, they are required to pay at least some arbitrator's fees.  Arbitrator's fees "are

unlike anything that [a party] would have to pay to pursue his statutory claims in court." *Cole*, 105 F3d

at 1484.

> [I]n *Gilmer*, the Supreme Court endorsed a system of arbitration in
> which employees are not required to pay for the arbitrator assigned to
> hear their statutory claims.  There is no reason to think that the Court
> would have approved arbitration in the absence of this arrangement.
> Indeed, we are unaware of any situation in American jurisprudence in
> which a beneficiary of a federal statute has been required to pay for the
> services of the judge assigned to hear her or his case.  Under *Gilmer*,
> arbitration is supposed to be a reasonable substitute for a judicial
> forum.

*Id.*

Thus, an applicant for employment cannot be required to arbitrate public law claims "if the

arbitration agreement required him to pay all or part of the arbitrator's fees and expenses."  *Id* at 1485.

Defendant contends that cases such as *Cole* and *Circuit City Stores* are inapplicable because

plaintiffs are not applicants for employment.  However, those cases do not expressly limit their holdings

solely to applicants for employment.  Moreover, as applicants for a mortgage, plaintiffs are placed in an

unequal bargaining position with respect to the Agreement to Arbitrate which they must sign in order to

obtain defendant's mortgage.  As beneficiaries of a federal statute, they also should not be required to

pay for the services of an arbitrator when they would not be required to pay for a judge in court.

Requiring payment of arbitrator's fees, as opposed to reasonable costs, is not permitted as a

condition of arbitration.  Although the Agreement to Arbitrate permits plaintiffs to recoup those fees

should they prevail, those fees should not be borne by plaintiffs even if they lose, just as a party is not

required to pay for the services of the judge regardless of the outcome in court.

18 - AMENDED FINDINGS AND RECOMMENDATION

      **d.**    **Confidentiality**

Plaintiffs also challenge the confidentiality clause which provides that: "Borrower and Lender agree that the arbitration proceedings are confidential.  The information disclosed in such proceedings cannot be used for any purpose in any other proceeding."  Agreement to Arbitrate, p. 2.  They contend that this clause is unconscionable because consumer fraud is a public interest problem that should be aired in a fair and open proceeding.

A similar confidentiality provision has been described as "rather draconian" and ruled substantively unconscionable.  *Ting*, 182 F Supp2d at 931.  As in *Ting*, this court is troubled by such secrecy.  However, *Ting* was a class action lawsuit involving a confidentiality provision in a contract that affected seven million Californians and which would be interpreted largely without public scrutiny.  "This puts AT&T in a vastly superior legal posture since as a party to every arbitration it will know every result and be able to guide itself and take legal positions accordingly, while each class member will have to operate in isolation and largely in the dark."  *Id*.  In contrast, this case involves a single consumer.  However, the Agreement to Arbitrate is a standard form which is apparently used by defendant in all of its loan transactions.  From that standpoint, defendant stands in much the same "vastly superior legal posture" with respect to its borrowers as AT&T stood with respect to its consumers in *Ting*.

Defendant has offered no rationale for the confidentiality provision.  Assuming that its arguments mirror those of AT&T in *Ting*, this court rejects them for the same reasons as in *Ting*.  Therefore, the confidentiality provision is deemed unconscionable.

      **e.**    **Severability**

19 - AMENDED FINDINGS AND RECOMMENDATION

Even though some provisions are unconscionable, defendant argues that the entire Agreement to Arbitrate is not rendered invalid.  The Agreement to Arbitrate contains a severability provision which provides that:  "If any term of this Agreement is unenforceable, the remaining terms of this Agreement are severable and enforceable to the fullest extent provided by law."  Agreement to Arbitrate, p. 2.

Assuming one or more provisions of an arbitration agreement are found unconscionable, a court may sever or restrict the unconscionable provision or refuse to enforce the entire agreement.  A clause cannot be severed from a contract when it is an integrated part of the contract.  *W.J. Seufert Land Co. v. Greenfield*, 262 Or 83, 87, 496 P2d 197, 199 (1972); *Hagan v. O'Connell, Goyak & Ball, P.C.*, 68 Or App 700, 683 P2d 563 (1984) (severing the penalty provision in a buy-sell agreement and enforcing the remaining provisions).  A "'contract is entire, and not severable, when, by its terms, nature, and purpose, it contemplates and intends that each and all of its parts, [and] material provisions . . . are common to the other, and interdependent.'"  *Hudson v. Wylie*, 242 F2d 435, 446 (9th Cir 1957), quoting *Leeker v. Marcotte*, 41 Ariz 118, 128-29, 15 P2d 969, 972 (1932).

An arbitration agreement is not severable if it is "permeated" by unconscionability.  *Armendariz*, 24 Cal 4th at 122, 99 Cal Rptr2d at 745, 6 P3d at 669.  For that reason, the Ninth Circuit refused to enforce an entire arbitration agreement:

> In addition to the damages limitation and the fee-sharing scheme, the unilateral aspect of the [dispute resolution agreement] runs throughout the agreement and defines the scope of the matters that are covered.  Removing these provisions would go beyond mere excision to rewriting the contract, which is not the proper role of this Court.

*Circuit City Stores, Inc.,* 279 F3d at 896.

20 - AMENDED FINDINGS AND RECOMMENDATION

Similarly in *Graham Oil Co.*, the Ninth Circuit severed the entire arbitration clause, rather than simply the unconscionable provisions pertaining to exemplary damages, attorney fees, and the statute of limitations, explaining:

> Here, the offending parts of the arbitration clause do not merely involve a single, isolated provision; the arbitration clause in this case is a highly integrated unit containing three different illegal provisions. Unlike the other clause, the arbitration clause here includes a survival provision that expressly preserves the entire clause in the event the contract is declared invalid. Moreover, it establishes a unified procedure for handling all disputes, and its various unlawful provisions are all a part of that overall procedure. Thus, we conclude that the clause must be treated as a whole and that its various provisions are not severable. Our decision to strike the entire clause rests in part upon the fact that the offensive provisions clearly represent an attempt by ARCO to achieve through arbitration what Congress has expressly forbidden.

*Graham Oil Co.*, 43 F3d at 1248-49.

Here the offending part of the Agreement to Arbitrate involves more than a single, isolated provision. As discussed above, this court finds three of its provisions (limitation on damages, confidentiality, and payment of a portion of the arbitrators' fee) to be unconscionable. Yet the entire agreement is not as one-sided as the arbitration agreement in *Armendariz* and *Circuit City Stores, Inc.*, and does not represent an integrated scheme to contravene public policy as in *Graham Oil Co.* Although it is a close call, and despite the strong federal policy favoring arbitration, this court concludes that the Agreement to Arbitrate is so permeated by unconscionability so as to render it invalid. It establishes a unified procedure for handling all disputes of which its three unlawful provisions are part and parcel. To remove these three key provisions would rewrite the contract. Accordingly, this court concludes that the Agreement to Arbitrate is not enforceable.

21 - AMENDED FINDINGS AND RECOMMENDATION

C.    **Scope of the Arbitration Clause**

Because this court finds that the Agreement to Arbitrate is invalid, it need not address its scope.

However, should this finding be rejected or reconsidered, this court will also address the scope of the

Agreement to Arbitrate.

The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable

for arbitration.  *See Gilmer*, 500 US at 26.  In determining the scope of an arbitration clause, the court

applies state law principles of contract interpretation "while giving due regard to the federal policy in

favor of arbitration by resolving ambiguities . . . in favor of arbitration."  *Wagner v. Stratton Oakmont,*

*Inc.*, 83 F3d 1046, 1049 (9th Cir 1996); *accord Intel Corp. v. Advanced Micro Devices*, *Inc.*, 12

F3d 908, 914 (9th Cir 1993), *cert denied*, 512 US 1205 (1994).  The court must bear in mind,

however, that "arbitration is a matter of contract and a party cannot be required to submit to arbitration

any dispute which [it] has not agreed to submit."  *United Steelworkers of Am. v. Warrior & Gulf*

*Nav. Co.*, 363 US 574, 582 (1960); *accord, AT&T Tech., Inc. v. Communications Workers of*

*Am.,* 475 US 643, 648 (1986).

Here the language of the arbitration clause very broadly defines claims as "anything arising out

of, in connection with, or relating to" the transaction.  Agreement to Arbitrate, p. 1.  This is sufficiently

broad to cover all of plaintiffs' claims in this case.  In fact, this court finds it difficult to imagine any

broader phraseology, and declines to construe it narrowly.  Moreover, plaintiffs have not even

attempted to prove that any of the claims are unsuitable for arbitration if the Agreement to Arbitrate is

valid and enforceable.

**RECOMMENDATION**

22 - AMENDED FINDINGS AND RECOMMENDATION

For the reasons set forth above, this court recommends that defendant's Motion to Stay Litigation Pending Arbitration (docket #4) be DENIED.

## **SCHEDULING ORDER**

Objections to the Amended Findings and Recommendation, if any, are due **September 20, 2002**.  If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.          If objections are filed, the response is due no later than **October 7, 2002**.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 29th day of August, 2002.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

23 - AMENDED FINDINGS AND RECOMMENDATION